UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| DALE TROWBRIDGE, Individually and as Next Friend of LESLIE ANN TROWBRIDGE,<br><br>            Plaintiff,<br>v.<br><br>COUNTY OF EATON, et al.,<br><br>            Defendants. | Case No. 1:05-cv-770<br><br>Honorable Robert Holmes Bell<br><br>**REPORT AND RECOMMENDATION** |

      This is a civil rights action brought against two employees of the Eaton County, Michigan, Friend of the Court. Plaintiff Dale Trowbridge brings this action pursuant to 42 U.S.C. § 1983 and pendent state-law theories for herself and her minor daughter, Leslie Ann Trowbridge. The gravamen of plaintiff's complaint is that the Eaton County Friend of the Court, defendant Allen Schlossberg, and a Friend of the Court investigator, defendant Matthew Moreau, failed to report child abuse and neglect made known to them by Dale Trowbridge involving Leslie Ann Trowbridge, then in the custody of her father, Terry Flowers. Plaintiff Dale Trowbridge initiated this action by the filing of a *pro se* complaint on November 16, 2005. Thereafter, Attorney George V. Warren entered his appearance for both plaintiffs and filed a first amended complaint.[1] The matter is now before the court on defendants' motion to dismiss or for summary judgment. (docket # 18).

---

[1] The first amended complaint also names Eaton County as a defendant. Plaintiffs' counsel has now made it clear that the county is not a party to any federal claims and is named only on the state-law counts. (Brief, docket # 23, at 5).

By order of reference dated November 28, 2005 (docket # 7), Chief Judge Robert Holmes Bell referred this matter to me for all pretrial purposes, including the filing of a report and recommendation on dispositive motions. I conducted a hearing on defendants' motion on June 13, 2006. I conclude that plaintiff's amended complaint fails to state a claim upon which relief can be granted, both because defendants are entitled to absolute, judicial immunity and because they are entitled to qualified immunity. I therefore recommend that the defendants' motion be granted. I further recommend that the pendent state-law claims be remanded to Eaton County Circuit Court. In light of this recommended disposition, it is unnecessary to reach defendants' alternative motion for summary judgment.

**Applicable Standard**

Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *See Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004). The court must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether it is established beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 300 (6th Cir. 2006); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). While the standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006); *National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005); *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1911 (2006). Courts are not required to

conjure up unpleaded allegations. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Hall v. Beast*, 116 F. App'x 557, 559 (6th Cir. 2004). The court need not accept as true legal conclusions or unwarranted factual inferences. *See Kottmyer*, 436 F.3d at 688; *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 608-09 (6th Cir. 2005); *Mezibov*, 411 F.3d at 716. "In practice, a '. . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993); *see Mezibov*, 411 F.3d at 716; *Fidel v. Farley*, 392 F.3d 220, 226 (6th Cir. 2005).

When defendants assert qualified immunity in the face of a claim under section 1983, the plaintiff bears an additional burden of pleading facts which, if taken as true, establish not only a violation of his federal rights but also that these rights were so clearly established when the defendant acted that any reasonable official would have understood that he was under an affirmative duty to refrain from that conduct. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419-420 (6th Cir. 2001). If this pleading burden is not satisfied, dismissal is proper. *Id.* at 424.

In challenging the sufficiency of the amended complaint, defendants have relied on the more extensive factual allegations of the original, *pro se* complaint. This is an invitation to error. Professor Wright states the general rule: "A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified. Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1476 at 556-57 (2d ed. 1990). "The prior pleading is in effect withdrawn

as to all matters not restated in the amended pleading, and becomes *functus officio*." *Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955); *see Tollen v. Ashcroft*, 377 F.3d 879, 882 n.2 (8th Cir. 2004) (collecting cases). The Sixth Circuit has indicated that the "better rule" is against taking judicial notice of a superseded pleading. *Shell v. Parrish*, 448 F.2d 528, 530 (6th Cir. 1971). Consequently, although the contents of a superseded pleading may be considered by the trier of fact at trial if the pleading is admitted into evidence, *see id.*, the sufficiency of the amended pleading must be judged on the basis of its allegations alone.

### Allegations of Amended Complaint

In 1991, plaintiff Dale Trowbridge obtained a state-court custody order granting her physical custody of plaintiff Leslie Trowbridge. In 1999 and 2000, after extensive proceedings, the circuit court granted permanent custody of Leslie to her father, Terry Flowers, who lived in Flint, Michigan. The custody order was ultimately affirmed by the state Court of Appeals. (Am. Compl., ¶ 4). In August 2000, Terry Flowers filed a neglect and abuse complaint against plaintiff Dale Trowbridge with the Family Independence Agency. A two-week investigation turned up no evidence of neglect or abuse. During the investigation, an FIA investigator contacted defendant Moreau, an investigator of the Eaton County Friend of the Court. Thereafter, plaintiff Dale Trowbridge contacted Moreau with information indicating neglect and abuse of Leslie by Terry Flowers, but Moreau "refused and/or ignored" the information. (Am. Compl. ¶¶ 7, 8). Defendant Schlossberg, the Eaton County Friend of the Court, conducted a hearing on October 7, 2003. (The purpose and context of the hearing is not alleged in the amended complaint.) During the hearing, allegations of neglect and abuse by Terry Flowers was presented. Following the hearing, Flowers physically

abused Leslie Trowbridge. (Am. Compl., ¶ 9). Furthermore, in a personal meeting with defendant Schlossberg, Leslie reported physical abuse and neglect by Flowers, but Schlossberg took no action. (*Id.*, ¶ 10).

In October of 2003, plaintiff Dale Trowbridge reported neglect and abuse to the Ingham County Family Independence Agency, which transferred the matter to the Genesee County Family Independence Agency. Plaintiff Dale Trowbridge was apparently arrested thereafter for purported parental kidnaping and was lodged in the Genesee County Jail. The parental kidnaping charge was eventually *nolle prossed* by the county prosecutor. The Genesee County Family Independence Agency confirmed the truth of the neglect and abuse allegations against Terry Flowers, and Leslie Trowbridge was removed by court order to the home of her maternal grandparents. After dismissal of the criminal charges against plaintiff Dale Trowbridge, she regained physical custody of Leslie. (Am. Compl., ¶¶ 12, 13).

Plaintiffs allege that defendants had an affirmative duty under state statutory law, MICH. COMP. LAWS § 722.623(1), to report suspected child abuse to the Family Independence Agency. (Am. Compl., ¶ 17).

**Discussion**

**I.     Quasi-Judicial Immunity**

Plaintiff's amended complaint seeks only money damages as relief. (Am. Compl., ¶ 3). Defendants have invoked the doctrine of absolute judicial immunity, which generally protects judges against such suits. *See generally Mireles v. Waco*, 502 U.S. 9 (1991). In addition to judges, the doctrine of judicial immunity protects "certain others who perform functions closely associated

with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). Defendant Schlossberg, who is the Eaton County Friend of the Court,[2] and defendant Moreau, who acts as an investigator for that office, each invoke this defense.

In determining whether a defendant is entitled to quasi-judicial immunity, the court must take a functional approach. "Immunity rests not on the status or title, but on the function performed." *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989). In the present case, the functions of the defendants are prescribed by statute. The office of Friend of the Court was established by the Michigan Legislature in the Friend of the Court Act, chapter 552 of Michigan Compiled Laws. The Act creates the office of Friend of the Court in each judicial circuit, and provides that the Friend of the Court is an employee of the circuit court, operating under the supervision and direction of the chief circuit judge. MICH. COMP. LAWS § 552.503(4), (5). The Act imposes numerous duties upon the Friend of the Court, many of which involve informing parties to divorce or custody proceedings of their rights under state law and the availability of mediation and other methods to resolve their disputes amicably. MICH. COMP. LAWS § 552.505(a)-(f). With regard to child custody disputes, the duties of the Friend of the Court are to investigate and to report, with recommendations, to the circuit judge:

> (g) To investigate all relevant facts, and to make a written report and recommendation to the parties and to the court regarding child custody or parenting time, or both, if there is a dispute as to child custody or parenting time, or both, and domestic relations mediation is refused by either party or is unsuccessful, or if ordered to do so by the court. The investigation may include reports and evaluations by outside persons or agencies if requested by the parties or the court, and shall include documentation of alleged facts, if practicable. If requested by a party, an

---

[2] Defendant Schlossberg also acted as a circuit court referee in this case. At oral argument, however, plaintiffs' counsel indicated that no claim is being asserted against him for decisions made in his capacity as referee, which is clearly a judicial role under state law.

>    investigation shall include a meeting with the party. A written report and recommendation regarding child custody or parenting time, or both, shall be based upon the factors enumerated in the child custody act of 1970, 1970 PA 91, MCL 722.21 to 722.31.

MICH. COMP. LAWS § 552.505(g). The Friend of the Court does not decide custody disputes. Rather, the report and recommendation of the Friend of the Court establishes background and context for the circuit court's custody decisions, which must be based on evidence of record. *See Duperon v. Duperon*, 437 N.W.2d 318, 319 (Mich. Ct. App. 1989).

The Sixth Circuit holds that those who investigate and prepare written reports to assist the eventual judicial decision maker are entitled to absolute, quasi-judicial immunity from damage actions. *See Rippy ex rel. Rippy v. Hathaway*, 270 F.2d 416, 422-23 (6th Cir. 2001). In *Rippy*, the court held that social workers who act in an advisory role to the juvenile court in recommending whether a child is ready to return home "act much in the same fashion as probation officers who make sentencing recommendations to criminal courts for which they are entitled to absolute immunity." *Id.* at 422 (citing cases); *accord Lawrence v. Chabot*, Nos. 05-1002, 05-1397, 2006 WL 1342316 at * 7 (6th Cir. May 16, 2006) (investigators for State Bar); *Timson v. Wright*, 532 F.2d 552, 553 (6th Cir. 1976) (probation officer).

After examining the Friend of the Court Act, the United States Court of Appeals for the Sixth Circuit has determined that the acts of Friend of the Court employees performed within the scope of their official quasi-judicial duties entitle them to immunity from damage actions brought pursuant to 42 U.S.C. § 1983, because they are functionally equivalent to probation officers. *Johnson v. Granholm*, 662 F.2d 449 (6th Cir. 1981). The Court of Appeals has thereafter reaffirmed this holding in unpublished opinions. *See, e.g., Nowicki v. Bruff*, No. 95-2233, 1996 WL 694141,

at * 2 (6th Cir. Dec. 3, 1996); *see also Ropoleski v. Rairigh*, 886 F. Supp. 1356, 1361 (W.D. Mich. 1995). *Ropoleski* is especially instructive, as it also involved allegations against the Friend of the Court arising from alleged acts and omissions in a child custody dispute. Judge McKeague noted that government officials who perform quasi-judicial duties are entitled to absolute judicial immunity, when their acts are "integral to the judicial process and are properly characterized as quasi-judicial or prosecutorial in nature." 886 F. Supp. at 1361. On this basis, Judge McKeague granted immunity to officials of the Kent County Friend of the Court who were accused by plaintiff of failure to protect the interests of the minor child in a custody dispute.

In response to the assertion of quasi-judicial immunity, plaintiff suggests that defendants were acting more like police officers and therefore are not entitled to immunity. This argument is unsupported. The Friend of the Court Act does not prescribe any function that remotely resembles a law enforcement activity, nor do the allegations of the amended complaint, accepted as true, assert such a role. Indeed, plaintiffs' entire complaint is that defendants *should have* adopted a more aggressive law enforcement function when faced with allegations of abuse and neglect, but that they failed to act. In the absence of any statutory duty resembling that of a police officer, this court is constrained to hold that *Johnson v. Granholm* controls and entitles defendants to absolute immunity.

On the basis of the foregoing authorities, I conclude that both individual defendants in this case are entitled to absolute judicial immunity from plaintiffs' claims for damages.

### II.     Qualified Immunity

Alternatively, defendants seek judgment in their favor on the basis of qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The standard to be applied in deciding a claim of qualified immunity is one of objective reasonableness. *Id.* The question whether qualified immunity attaches to an official's actions is a purely legal issue for the court. *See Fisher v. Harden*, 398 F.3d 837, 841 (6th Cir.), *cert. denied*, 126 S. Ct. 828 (2005); *see also Barnes v. Wright*, No. 04-6288, ___ F.3d ___, 2006 WL 1506714, at * 3 (6th Cir. June 2, 2006).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence. The initial inquiry must be whether the plaintiff has alleged facts showing that the officers' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *see Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) ("Whether a constitutional violation occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right, there is no need for further analysis."); *accord Caudill v. Hollan*, 431 F.3d 900, 908 n.5 (6th Cir. 2005) ("[D]istrict courts . . . may not assume a constitutional violation or skip to qualified immunity, even when qualified immunity analysis seems conclusive.").

If a plaintiff satisfies the initial requirement, plaintiff must show that the right plaintiff claims defendant violated was "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his or her

behavior violated that right. 533 U.S. at 202. The Supreme Court's recent decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein*, 440 F.3d at 316. "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005)(quoting *Brosseau*, 543 U.S. at 198-99). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Rippy*, 270 F.3d at 424. "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 202).

      Plaintiffs' claim falters on both prongs of this analysis. First, plaintiffs have failed to state a claim upon which relief can be granted for violation of their federally guaranteed rights. The gravamen of plaintiffs' claim is that Leslie Trowbridge was injured by her father, Terry Flowers, and that defendants' "non-reporting of suspected child abuse and neglect" by Flowers exposed Leslie

to greater danger. (Am. Compl., ¶ 14). These allegations are indistinguishable from those found wanting by the United States Supreme Court in *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989). In *DeShaney*, young Joshua DeShaney was severely beaten and permanently injured by his father after the state failed to remove the boy from his father's custody. The defendants were a county department of social services and several of its social workers, who had received complaints that the child was being abused by his father but failed to act. The Supreme Court held that the defendants' failure to provide the child with adequate protection against his father's violence did not abridge any federally guaranteed right. The Court remarked that, as a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." 489 U.S. at 197. The Court further rejected the argument that a "special relationship" existed because defendants knew that the minor faced a special danger of abuse at his father's hands. The Court found that, although state law may have imposed a duty to act, defendants' omissions abridged no federally guaranteed right. *Id.* at 197-98. The Court continued:

> It may well be that, by voluntarily undertaking to protect Joshua against the danger it concededly played no part in creating, the State acquired a duty under state tort law to provide him with adequate protection against that danger. But the claim here is based on the Due Process Clause of the Fourteenth Amendment, which, as we have said many times, does not transform every tort committed by a state actor into a constitutional violation. A State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes. But not "all common-law duties owed by government actors were . . . constitutionalized by the Fourteenth Amendment." Because, as explained above, the State had no constitutional duty to protect Joshua against his father's violence, its failure to do so -- though calamitous in hindsight -- simply does not constitute a violation of the Due Process Clause.

*DeShaney*, 489 U.S. at 201-02 (citations and footnotes omitted).

-11-

The allegations of the amended complaint in the present case are indistinguishable from the situation facing the *DeShaney* Court. As in *DeShaney*, plaintiffs allege that defendants had actual knowledge of impending harm to a minor and that the defendants had a state-created duty to take steps to prevent that harm. Such allegations, without more, are clearly insufficient under *DeShaney* to establish a constitutional violation. Plaintiffs attempt to distinguish *DeShaney* by arguing that defendants had a state-created, affirmative statutory duty to report suspected abuse.[3] The attempt is unavailing. The *DeShaney* Court expressly assumed that state officers would have "affirmative duties of care and protection" imposed by the state legislature. 489 U.S. at 202. The Court nevertheless held that these state-created affirmative duties do not become "constitutionalized" by the Fourteenth Amendment. *Id.* Consequently, even assuming that defendants' inaction violated an affirmative statutory duty under Michigan law, *DeShaney* teaches that no federal rights are thereby abridged.

The *DeShaney* Court acknowledged that in certain limited circumstances, the Constitution imposes upon the state affirmative duties of care and protection with respect to particular individuals. 489 U.S. at 198. The lower courts, following up on this observation, have

---

[3] The existence of such a state-created duty is subject to grave doubt. Plaintiffs rely on the Michigan Child Protection Law, which requires that certain enumerated persons report suspected child abuse to the Department of Human Services (formerly the Family Independence Agency). The enumerated classes of persons include health care providers, counselors' school administrators, social workers, and law enforcement officers. MICH. COMP. LAWS § 722.623(1)(a). Court employees generally, and Friend of the Court employees specifically, are not mentioned. Plaintiffs nevertheless contend that the Friend of the Court and his investigators are "law enforcement officers." That term generally refers to executive branch employees, such as prosecutors and sworn police officers, *see generally People v. Jones*, 650 N.W.2d 717, 719 (Mich. Ct. App. 2002), and excludes the judicial branch, *see People ex rel. Leonard v. Papp*, 194 N.W.2d 693, 699 (Mich. 1972). For analytic purposes, however, I accept plaintiffs' assertion that defendants were covered by the Act.

recognized two narrow exceptions to the *DeShaney* rule. These are the "custody exception" and the "state-created danger exception." *See Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005). Neither exception, however, can possibly apply to the allegations in plaintiffs' amended complaint.

The "custody exception" triggers a constitutional duty to provide adequate medical care to incarcerated prisoners, those involuntarily committed to mental institutions, foster children, pretrial detainees, and those under other similar restraints of personal liberty. *See Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005). Under this exception, when the state takes a person into custody and holds him there against his will, the Constitution imposes upon the state a corresponding duty to assume some responsibility for the person's safety. *Id.* "The overarching prerequisite for custody is an affirmative act by the state that restrains the ability of an individual to act on his own behalf." *Id.* It cannot possibly be argued, on the basis of the facts set forth in the amended complaint, that Leslie Trowbridge was in the custody of the Eaton County Friend of the Court at any time. As the Friend of the Court Act makes clear, the Friend of the Court has no power or authority over any individual -- the Friend of the Court merely investigates and makes recommendations, which the circuit court may or may not take into account in arriving at custody decisions. *See Duperon*, 437 N.W.2d at 319. Leslie Trowbridge was no more in the custody of the Eaton County Friend of the Court than Joshua DeShaney was in the custody of the Winnebago County Department of Social Services. In both cases, the child was in the custody of his or her natural father, "who was in no sense a state actor." *DeShaney*, 489 U.S. at 201.

To qualify for the "state-created danger exception," a plaintiff must plead and prove three elements: (1) "affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence;" (2) the victim faces "special danger," in that

the "state's actions placed the victim specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state must have known or clearly should have known that its actions specifically endangered an individual. *May v. Franklin County Commissioners*, 437 F.3d 579, 584 (6th Cir. 2006) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). Plaintiffs' claim in the present case falters on the first ground.  Plaintiffs have not alleged any affirmative act by defendants that either created or increased the risk of alleged harm from Terry Flowers.  Instead, plaintiffs allege that defendants were on notice of neglect and abuse by Flowers, but that they ignored the information and took no action.  (Am. Compl., ¶¶ 8, 10).  In applying the state-created danger exception, the Sixth Circuit requires an *affirmative act*.  *See Jones v. Reynolds*, 438 F.3d 685, 691 (6th Cir. 2006); *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir. 1995). A failure to act "is not an affirmative act under the state-created danger theory." *Jones*, 438 F.3d at 691 (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)).  For example, in *Sheets v. Mullins*, 287 F.3d 581, 588-89 (6th Cir. 2002), the court rejected a claim arising from an alleged failure to pursue and investigate a domestic disturbance call, as this failure was not an affirmative act.  Similarly, in *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir. 2000), the court found that the state-created danger exception was unavailable to a plaintiff who alleged that state officers failed to call an ambulance when plaintiff was obviously injured, as this failure was again not an affirmative act.  *See Jones*, 438 F.3d at 691-92 (collecting cases).  Where, as here, a plaintiff fails to allege the existence of an affirmative act by defendants, and therefore fails to meet the first prong of the state-created danger exception, it is unnecessary for the court to consider the second and third prongs.  *Jackson*, 429 F.3d at 591.

Plaintiffs nevertheless argue that they have met the affirmative act requirement, again relying on the alleged existence of an affirmative duty to report child abuse under state statutory law. At oral argument, plaintiffs' counsel asserted that an affirmative duty, followed by the failure to act, is sufficient to satisfy the affirmative act requirement. Counsel was frank to admit, however, that he had no case so holding. This is not surprising, as such a doctrine would likely eviscerate the affirmative act requirement. As noted above, it may be assumed that police officers, social workers, and numerous other officials have affirmative duties under *state* law; nevertheless *DeShaney* holds that no *federal* right is violated by failure to intervene. Furthermore, the Sixth Circuit has rejected the very argument plaintiffs now advance. In *Cartwright v. City of Marine City*, 336 F.3d 487 (6th Cir. 2003), plaintiff argued the existence of a "special relationship" under *DeShaney* arising from a Michigan statute creating an affirmative duty on law enforcement officers to take an incapacitated person into protective custody. 336 F.3d at 492 (citing MICH. COMP. LAWS § 333.6501). The court held that the existence of this affirmative statutory duty was irrelevant to analysis under *DeShaney*. "Even if defendants should have taken decedent into custody under state law, their failure to do so does not transform that error into a constitutional wrong." *Id.*

Plaintiffs have therefore failed in their burden to establish the first factor necessary to defeat the qualified immunity defense -- allegation of facts which, if true, establish violation of a "constitutionally protected right." *See Cartwright*, 336 F.3d at 491. Furthermore, plaintiffs have not, and cannot, show that the right they claim was so "clearly established" in 2003 that a reasonable officer would have been on notice of the illegality of his conduct. *Id.* In this second prong of qualified immunity analysis, a plaintiff must cite decisions of the Supreme Court or Sixth Circuit clearly enunciating a constitutional rule of conduct. *See Gragg v. Kentucky Cabinet for Workforce,*

*Dev.*, 289 F.3d 958, 964 (6th Cir. 2002). Plaintiffs have cited no case holding that judicial-branch officers who fail to act in response to allegations of child abuse violate federal constitutional rights. In fact, plaintiffs' counsel admitted at argument that no case supports a conclusion that defendants' alleged failure to act can be deemed an affirmative act because of a statutory duty to report. The only Sixth Circuit case to find that the affirmative act requirement had been satisfied was based upon a municipality's release of private information in police officers' files, thus affirmatively exposing them to danger. *Kallstrom*, 136 F.3d at 1067. No Sixth Circuit or Supreme Court case even remotely suggests that the affirmative act requirement has been satisfied in the circumstances of the case. "By contrast, failure to act is not an affirmative act under the state-created danger theory." *Cartwright*, 336 F.3d at 493.

Controlling authority from the Sixth Circuit requires recognition of the defense of qualified immunity in the circumstances of the present case. *Jackson v. Schultz*, among other cases, is controlling. In *Jackson*, the complaint alleged that defendants (Detroit Fire Department emergency medical technicians) watched decedent die in the back of an ambulance without providing any medical care. Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that they were entitled to qualified immunity. The Court of Appeals found that plaintiffs had not stated a claim upon which relief could be granted, because, under *DeShaney*, defendants violated no federal constitutional right, even accepting plaintiffs' factual allegations as true. The court went on to find that the custody exception did not apply, because the decedent was never in custody, and that the emergency technicians took no affirmative act creating or increasing the danger to the decedent. 429 F.3d at 590-91. On this basis, the Court of Appeals found that plaintiff failed to make either showing necessary to defeat the assertion of qualified immunity,

because her complaint did not allege sufficient facts to support a constitutional violation and because there were no cases finding a constitutional right to medical care under similar circumstances. *Id.* at 592. The same result must prevail in the present case. The allegations in plaintiffs' amended complaint, accepted as true, fail to state sufficient facts to support a claim for a constitutional violation. Furthermore, plaintiffs have cited no case in which the Sixth Circuit or Supreme Court have ever found liability arising from the mere failure of a judicial branch agency, such as the Michigan Friend of the Court, to follow up on complaints of danger. To the contrary, the *DeShaney* case itself, which is indistinguishable from the present case, teaches that no constitutional claim arises in these circumstances. Defendants are therefore entitled to dismissal of plaintiffs' federal claims on this alternative ground.

### III.    State Claims

The amended complaint also asserts claims under the Michigan Constitution, statutes, and common law. Defendants removed this case from the Eaton County Circuit Court on the basis of plaintiffs' federal claims arising under section 1983. If, as recommended above, all such federal claims are dismissed on grounds of absolute and qualified immunity, the state-law claims should be remanded to the Eaton County Circuit Court for further proceedings. *See Widgren v. Maple Grove Township*, 429 F.3d 575, 586 (6th Cir. 2005).

### Recommended Disposition

For the foregoing reasons, I recommend that defendants' motion to dismiss (docket #18) be granted on the grounds of absolute and qualified immunity, with regard to all federal claims.

I further recommend that plaintiffs' state-law claims be remanded to the Eaton County Circuit Court for further proceedings.

Dated:   June 15, 2006             /s/  Joseph G. Scoville
                                    United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).